# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TRONICK D. MASSEY,**

        **Plaintiff,**

  **v.**                              Case No. 19-CV-1019

**ANNE SPRINGHOFF,** *et al.*,

        **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Tronick D. Massey, who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 1.) Massey was allowed to proceed on an Eighth Amendment claim against defendants Anne Springhoff and Jon Zielsdorf for transporting him in a steel van with no seatbelts. Massey was also allowed to proceed against Kenosha County under a theory of municipal liability pursuant to *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1971) because he alleged that Kenosha County had a policy, practice, or procedure to use an unsuitable van that caused inmates injuries. The parties filed cross-motions for summary judgment. (Docket # 46, Docket # 49). The parties have consented to the jurisdiction of a magistrate judge. (Docket # 6, Docket # 36.) For the reasons stated below, I will deny Massey's motion for summary judgment and grants the defendants' motion for summary judgment.

# FACTS

*Preliminary Matters*

In their reply brief, the defendants argue that the court should deem the entirety of their Proposed Findings of Fact as admitted because Massey failed to comply with Federal Rule of Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary judgment. (Docket # 63 at 2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Massey's response materials do not formally conform with the rules, his response contains sufficient facts, allowing the court to rule on the defendants' summary judgment motion. Massey also invokes 28 U.S.C. § 1746 in his complaint, which is sufficient to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, I will consider the information contained in Massey's submissions where appropriate in deciding the defendants' motion.

*The Trip to Prairie du Chien Correctional Facility*

On April 26, 2019, Massey was transported from Kenosha County Pretrial Facility to Prairie du Chien Correctional Institution. (Docket # 51, ¶ 6.) Defendants Anne Springhoff and Jon Zielsdorf were employed by the Kenosha County Sheriff's Department as transport/trip officers and were the officers assigned to the April 26 trip. (*Id.*, ¶¶ 1, 2.) In addition to Massey, two other inmates were riding in the transport van, which was a Chevrolet Express Van, identified as Van 310. (*Id.*, ¶¶ 6-7.)

According to Massey, after he was handcuffed and shackled, Springhoff and Zielsdorf placed him in Van 310 without telling him about the seatbelts or securing him in a seatbelt. (Docket # 62 at 3.) Massey then rode in the van, which had only all-steel seats with no padding from approximately 5:00 a.m. to 9:45 a.m. (*Id.* at 4.) Massey states that for the entirety of the ride, because he was not secured by a seatbelt, he ended up "bouncing up and down upon his scrotum repeatedly," causing him to cry. (*Id.*) During the ride, Massey asserts that the defendants "did not monitor or communicate with me in that van at all [and] if they did they would have known that I did not know that there were seatbelt [*sic*] and that I was not wearing one and that I was being hurt." (*Id.* at 8.)

The defendants state that generally, prior to transporting an inmate, "inmates are informed of the seatbelts in the transport van, directed to secure their own seatbelt and to ask for assistance if needed." (Docket # 51, ¶ 16.) Also, because of safety and security concerns, transport officers typically do not fasten the seatbelts of inmates. (*Id.*, ¶ 17.) Inmates can also secure their own seatbelts despite being handcuffed and shackled because the seatbelts are designed in such a way to allow inmates to do it themselves. (*Id.*, ¶ 19.) The defendants do not definitively state that they told Massey on that day that there were seatbelts in Van 310, and that he had to fasten his own seatbelt. They do, however, assert that Massey neither asked for assistance nor reported that he could not fasten his seatbelt at any time during the trip. (*Id.*, ¶ 20.) Also, both Springhoff and Zielsdorf believed that Massey had fastened his seatbelt and at no point during the trip were they aware he wasn't wearing his seatbelt. (*Id.*, ¶¶ 22, 27.) They also assert that during transport, they generally "would monitor and communicate with inmates in the transport van," and during the April 26, 2019 trip, Massey "did not report any issue or concern," nor were any complaints

ignored. (*Id.*, ¶¶ 25-26, 30.) Additionally, the defendants note that they drove on a major highway the majority of the trip, so the ride was smooth; they drove in a safe and cautious manner; and neither of the other two inmates in the van reported issues or injuries. (*Id.*, ¶¶ 28-29, 33.) They also were unaware of any mechanical or other issues with Van 310 on April 26, 2019 that may have impacted the quality of the ride. (*Id.*, ¶ 47.)

*Arrival at Prairie du Chien Correctional Facility*

Once Massey arrived at Prairie du Chien and the defendants let him out of the van, Massey states Springhoff noticed he was crying and asked if they woke him up. (Docket # 62 at 4.) Massey told the defendants about what occurred on the ride, and according to Massey, Springhoff responded, "This is why we prefer to use the Suburban," referring to the other type of vehicle that Kenosha County uses to transport inmates. (*Id.* at 4; Docket # 51, ¶ 48.) The defendants state that once they arrived at Prairie du Chien, they were not aware that Massey was distressed or in need of medical attention. (Docket # 51, ¶ 32.)

Massey then asked to see someone from the medical department at Prairie du Chien but does not state whether he asked the defendants or staff at the prison. (Docket # 62, at 4.) He was seen by medical staff almost an hour after he arrived, and by that time, his pain level "was at a clear five." (*Id.*) Massey was treated for sore testicles and prescribed Tylenol and ibuprofen. (Docket # 51, ¶ 49.) He did not need additional medical treatment for the injuries he sustained in the van after April 26, 2019. (*Id.*)

*Kenosha County's Use of Transport Vehicles*

Defendant Kenosha County has four Chevrolet Express vans that it uses for transportation of prisoners. (Docket # 51, ¶ 37.) The vans were configured into "insert vans," which means they were outfitted with a metal insert in the passenger area of the van

4

that would allow for the transport of inmates. (*Id.*, ¶ 38.) This includes a divided passenger area that splits into three separate secure areas; a padlock system; a clear Plexiglas window that allows the transport officers to view the passengers; seatbelts; and a metal bar with a foam covering that "can lock down for further securing the subjects being transported." (*Id.*, ¶¶ 37-41.)

When determining which vehicle should be used for a trip, the Kenosha County Transport Supervisor, not the defendants, uses his or her discretion. (*Id.*, ¶¶ 43-44.) The Transport Supervisor considers the number of inmates being transported, the planned destinations, the type of inmate being transport, and whether the inmate has any known medical or behavioral issues. (*Id.*, ¶ 44.) It is undisputed that other than Massey's complaint, Kenosha County has no record of any reports or claims from other individuals that they were injured while riding in any of the vans. (*Id.*, ¶ 35.) The defendants also state there is no indication that Kenosha County or Springhoff and Zielsdorf had any reason to believe that using a Chevrolet Express van caused injuries or was otherwise inherently dangerous. (*Id.*, ¶ 36.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary

5

Case 2:19-cv-01019-NJ    Filed 08/04/21    Page 5 of 10    Document 68

judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Massey asserts that he was subjected to an unconstitutional deprivation when the defendants made him ride in a transport van with all-steel seats and did not inform him how to secure his seatbelt. The defendants move for summary judgment arguing that Massey cannot establish proof which would impose liability on Kenosha County or the officers, that the officers are entitled to qualified immunity, and that he fails to establish a *Monell* claim.

The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[O]fficials violate the Eighth

6

Amendment if they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities." *Budd v. Motley,* 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To qualify as a constitutional violation, the deprivation must be extreme, and to ascertain whether the deprivation is extreme, courts are to use "contemporary standards of decency." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and '[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347.) "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his health or safety; and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

While the defendants dispute whether they told Massey about the seatbelts, even when taking the facts in a light most favorable to Massey, Massey fails to present sufficient facts on which a reasonable jury could find an Eighth Amendment violation. First, the conditions of Van 310 are not so extreme that they offend the contemporary standards of decency. "[C]onditions on a prison transport vehicle are far different than the confines of a brick and mortar prison. Thus, some deprivations will naturally occur when inmates are being transported outside of secure facilities." *Steele v. Prisoner Transport Systems*, Case No. 3:18-CV-549, 2019 WL 330945 at *2 (N.D. Ind. Jan. 24, 2019). Courts have found that transporting inmates without a seatbelt is not sufficiently serious to give rise to a

7

Case 2:19-cv-01019-NJ    Filed 08/04/21    Page 7 of 10    Document 68

constitutional violation unless it is one of many factors that cause an extreme deprivation. *See Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012). Additionally, even where there are many factors, such as long waits to use the restroom, limited daylight, no seatbelt, and the inability to lay down, the transport still did not rise to the level of a constitutional claim. *Steele*, 2019 WL 330945 at *2 (listing cases).

Here, while Massey may not have been aware of the seatbelts, it is undisputed that Van 310 had seatbelts. Massey's failure to use seatbelts at most was negligence on the part of Springhoff and Zielsdorf because they simply forgot to tell him. "'[D]eliberate indifference entails something more than mere negligence.'" *Peterson v. Wexford Health Svcs.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer*, 511 U.S. at 835). Also, the only other factor that Massey asserts caused him unnecessary pain is the unpadded, all-steel seats, which, even when combined with the lack of seatbelts, does not rise to the level of an unconstitutional deprivation.

Also, Massey's scrotal injury does not cause the conditions of his transport to tip over into the level of an unconstitutional deprivation. It is clear Massey was in pain, but he was treated upon arrival at Prairie du Chien with over-the-counter pain medicine. There is also no evidence that Massey had long-lasting effects from his ride in the transport van. While a plaintiff "need not show a 'significant injury' in order to have a good claim under the Eighth Amendment," where the injury is *de minimus*, as Massey's injury is here, he needs to demonstrate that the official "inflicted pain maliciously or sadistically." *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012). There is no evidence that the defendants maliciously or sadistically allowed Massey to suffer. Even when taking the facts in a light most favorable to Massey, there is no evidence that the defendants were even aware of

Massey's discomfort until they arrived at Prairie du Chien. Once there, Massey got medical attention within an hour. Thus, Massey fails to demonstrate that he suffered an extreme deprivation that was sufficiently serious and a substantial risk to health and safety. Summary judgment is granted in Anne Springhoff's and Jon Zielsdorf's favor.

As to the *Monell* claim against Kenosha County, "a municipality cannot be held liable under *Monell* where there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). Thus, summary judgment is granted in Kenosha County's favor as well. Because the defendants' motions are granted, Massey's motion for summary judgment is denied. Finally, I need not address the defendants' qualified immunity argument because the court grants summary judgment in their favor on the merits.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** the defendants' motion for summary judgment (Docket # 49) is **GRANTED.**

**IT IS FURTHER ORDERED** that Massey's motion for summary judgment (Docket # 46) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension

and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 4th day of August, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge